Our next and last case today is Department of Central Management Services v. Illinois Labor Relations Board. That is case number 4100729 for the appellant, Lawrence Weiner, for the appellee, Melissa Arbach, and Eric Truitt. Are you splitting time? Okay, and you conferred with the clerk on that very well. Please proceed. May it please the court, Lawrence Weiner on behalf of the state. First of all, I'd like to apologize to the court on the reply brief. We were besieged with a bunch of emergency matters, which also has accounted for some of these continuances I've been getting. I thank the court for indulging us in that, allowing us to do that. They've all been fortunately uncontested by counsel, but it's greatly appreciated. I just want the court to know that. I feel badly about it, but the situation has been somewhat chaotic for the last several months. As to this case, I'd first like to address the issues of the statement of the argument that our argument portion should be stricken for lack of record citations. In my reply brief, I go into quite an analysis of this. But I'd like to say in addition to what I have there, it's my belief that ordinarily we don't put record cites for the facts in an argument section. I've been doing this since 1964. I've had over 200 appeals. I'm a member of the Board of Directors of the Appellate Lawyers Association. Except if we, like the rule says, if there's matters that are too lengthy or whatever and that we incorporate them, then we give a cite or there's a particular fact or a quote, then we would give a cite in the argument section. But ordinarily, there's very few, if any, citations to the record in an argument section of a brief. You may find that I'm wrong in that, and I've been wrong maybe for 47 years, but that's my experience in this. And I certainly didn't mean to violate any rules, and I didn't think I did. The section involved, as I point out, Rule 314.87, says that the appellant's brief shall contain the contentions of the appellant and the reasons, therefore, with citation of the authorities, and of course that's not facts, and the pages of the record rely on. Evidence shall not be copied at length, but reference shall be made in the pages of record on appeal or abstract, if any, where the evidence may be found. But that's when to avoid copying at length in the brief, and then you refer back to it. If you look even at the union's brief, there are only two citations to the record in that brief in her argument section. The other thing is that every single one of these facts, or there may have been a couple misses that Mr. Tewitt might point out to you, but almost every one, and I thought every one of these facts in the statement of facts, had a record citation. The argument section, to a large extent, is just a verbatim repetition of the facts that were in the statement of facts. The pages of facts are only like nine or ten pages of facts, and the exhibits were twenty exhibits, but about only ten of them referred to the contested petition for people in this unit. So it was a very short record, and you had a full, or at least attempted to have a full citation to the record in the statement of facts where I thought it should belong. I think the Supreme Court has spoken on that, that this Court has spoken on that. If you find contrary, and that I in some way erred on that, I apologize again, and the state will never happen again. I'll have a record cite for every statement of fact in the argument. But I think that's stretching it, and all the cases that are cited are either totally distinguishable, and I won't go into it because I distinguish each one of them in my brief. Another thing is there's no formal motion to strike, it just was a request. There's one Court that held that you needed a formal motion to accomplish what the strike portions of an argument. So again, if I erred on that, I'm sincerely going to apologize. It wasn't intended by any stretch of the imagination. I've also put in my brief, and there's been an objection to it, and a development happened later. I just made a reference to the Davis case. We don't have to go into any of the arguments because it's a moot point now in the sense that there was a decision rendered. And I know that that's a non-precedential decision, it's not a final decision. That being the case, when we started that disposition, I felt as an attorney that I had an obligation to disclose to this Court for whatever purposes it may use or not use, because it was integral to this particular case. And I felt an obligation to disclose that to the Court. So that's the only reason I included it in the brief. The gist of this case, the gravamen of this case, is that, again, and I say again because Your Honors have written opinions on these issues, particularly what I'll call the ICC case that was decided December 28, 2010, and in the recent Department of Central Management Services case, the PS Option 2 case, which were decided. And there this Court meticulously went over, in both of those cases, the Court meticulously went over what standards the Board was using to determine whether someone should be excluded on a managerial, supervisory, or confidential basis. And the Court found, specifically, and I quote those in my reply brief, both in my initial brief as to the ICC case, which existed at the time, and then in my reply brief at page 11 with regard to the PSA Option 2 case, of those particular findings about what the standards should be. And as in the PSA Option 2 case, I attempted, in the same way the Court did, in both those cases to state, here's the standard, and here's the standard that was applied, and the standard was wrong. I do have a typo correction on page 12, on the first full paragraph. With respect to the standard for confidential employees, this Court concluded that the ILRB, quote, erred by applying the job descriptions of the PSA 2s to its own re-characterized standards, dash, I have whether or not, it's which are not the standards required under the Act, which are not the standards. And this is the same thing. This is, in the words of Yogi Berra, deja vu all over again, except for the third time. You have, and one of the, they just keep repeating, as a mantra, it is the final responsibility and independent authority to establish and effectuate policy that determines managerial status under the Act. That said numerous times by both the ALJ, by the Board, and by the hearing for this Court by the ILRB in its briefs, by the union in its briefs, that one statement, it's the final responsibility and independent authority to establish and effectuate policy that determines managerial status. They don't even cite your recent PSA action 2 case, which was issued 20 days before they filed the briefs. And they handled the case anyway, so they knew the decision came down, the same union, the same ILRB, same attorney general. They knew, this Court said, well you don't have to exercise, you don't have to formulate policy at all. You don't have to have the final responsibility for promulgating policy. And it's not that you establish and effectuate policy, it's establish or effectuate policy. Something that goes all the way back to the Yeshiva case. There's always been a disjunctive in there, which is rewritten by these arguments. So there were three errors in that one statement. Final, because it isn't final, responsibility, independent authority. This Court addressed that issue square on and said that you don't need the independent authority. And to establish policy, you don't need to establish policy. Your Honors came flat out and said that it's not required that you formulate policy at all. You have to effectively recommend things, give effective recommendations in the effectuation of policy, which mirrors the language of the statute itself. But that's not the only error in terms of standards. So we're not talking about something like against the manifest way of the evidence. We're talking about the legal standard for determining whether someone is managerial, whether confidential, supervisory. And I go through a complete analysis. I don't know if it's complete, total complete analysis, but it's certainly giving numerous examples of how they refuse. What they're doing is they take the case, and then they quote the language that's favorable to them, because that language is in the opinion, but it's qualified, but they disregard and ignore the later qualification like Your Honor said in the ICC case. You don't have to formulate policy, but you don't have to formulate policy at all. And yet they say, well, this person is included in the unit because they don't have the final authority, an independent authority to establish and effectuate policy. Ignoring this court's clear and unequivocal statement that that's just not true. It's just not the right standard. And I don't have much time to go through all of them, but the same thing is with regard to giving us a hearing. I might say that since your ICC case, and even more so after your PSA Action 2 case, we have been receiving more hearings by the Illinois Labor Relations Group. So I think a good effect was had there. And I think ordinarily, I mean, I think that the trouble is that they still, in this case, they still maintain basically that we have to prove our whole case, prove that we would prevail before we have a right to an oral hearing. And I quote in page 15 of my reply, I quote various sections of the ALJ's RDO, the ILRB says the same thing. The board does not need to convene a hearing where the employee has not advanced facts that, if proven, would entitle it to prevail. We have to establish that the disputed employees are managerial and confidential in order to get a hearing. Now, I think your honors in both the cases discuss the fact that we don't need to go that far. All we need to do is establish that there is a reasonable cause to believe that there are unresolved issues relating to the question concerning representation. The threshold is not as high, as established by this court, as the ILRB and union continue to assert. It's just another disregard, completely ignoring the later precedent. They cite their own precedent, they cite other pre-existing cases, including a case by this court. But, you know, it's interesting, the final responsibility, there are cases going all the way back many years, the salary employees case and the chief judge case, where they, on the managerial issue, said you don't have to have the authority. So, it's really final authority, you don't have to formulate policy. So, that stuff's been around a long time, and yet it was never reaffirmed or used, you know, following that authority. So, just like the other thing we raised is requiring specific evidence as to a specific employee. I mean, that's truly just the wrong way of looking at things, because someone may be a new employee. Actually, what they've done is a direct violation of the city of Freeport case, where the court said it's the authority, not the exercise of the authority, that determines status. It's the position, description, and the evaluations, etc., which are in evidence here, and I can go through each one of them individually if you wish, that establish what the position is. Someone, you don't have to be a lion, you can be a mouse. But if you have the authority, then that's sufficient. So, that's another type of way of, by demanding specific examples, for example, a new employee or a new position would have no history, or maybe you're just an employee that doesn't discipline people. Now, getting to the facts, though, before I run out of time. You know, this is at the NERF Center. These five people, and now four people, are at the NERF Center of Central Management Services. This is the personnel section of the Department of Central Management Services, and they service 51 agencies. And you look at Ms. O'Donnell, and her position is the same as Erin Davis's position exactly. They report to the same person, Ms. Bichotte, who's here today. One deals with FLSA, one deals with FLA, but that's not a determinative determination. It's a determinative matter. You have evidence in the record that Ms. O'Donnell handles or attends to state and FLSA cases. I don't know what that means. I don't know what that means in terms of either of the tests. And it appears to me that we've got the person named, we've got the tests that should be used, and then we've got a list of their duties. I can't make the leap, and I'm reasonably intelligent, but I don't have the experience or the background in state government to understand that simply because those are duties, that that somehow makes me a confidential employee because I represent somebody regarding discrimination complaints. Well, that representation could... I can envision it not being a confidential employee, depending upon how I perform that job or how I'm permitted to perform that job. Or I can imagine it, yes, it is a confidential employee, depending upon what I do within that general description of my duties. I don't know if I've said that very well, but I... I understand what you're saying, but I think that, particularly with respect to what you're talking about, that they're defending complaints before the Labor Board, complaints before the Equal Employment Opportunity Commission, complaints before, under the Fair Labor Standards Act, complaints under FMLA of employees that are working for the agency, the agencies involved, the state. They're working for the state who are represented by the union, the same union. How can they independently, with any degree of loyalty, any degree of conflict, fight the... If they were in the union, they'd be fighting... they would be trying to dismiss or handling claims against the state by their fellow union members. Well, then, my legislature ought to say every lawyer that works for the... that does anything for any of these agencies... No, no. ...has to be confidential. No, I'm not saying that at all. I'm saying that there's a... that this is against their own union people. Lawyers do all sorts of things for the state. They don't involve fighting other unionized employees. Your Honor made a comment in the case you're referring to that there has to be some independent, some independent, and some not divided loyalties. I mean, that's the difference. And what they do is they consult on a daily basis with Mr. Shutt, both of them. And they are dealing with suits against the state. Yeah, you are out of time, but you'll have your bottle. Thank you, Your Honor. I'll go into it more. Mr. Clerk, after we start the next argument, if you'd shut those blinds on the far right window, I'd really appreciate it. Should I wait for him, or can I go ahead? You can just wait. Okay. That's good, thank you. Or is that bothering you in a way? No. I can't see anymore. What? Okay, counsel, you may proceed. May it please the Court, I'm Eric Truitt, Assistant Attorney General. I represent the Labor Relations Board in this case. I'd like to pick up where my friend left off, because I think it illustrates how the Board handled this case. Initially, you had eight employees who were petitioned to become part of the bargaining unit. Three of those were excluded by agreement because they were Labor Relations Counsel. They were directly involved in the collective bargaining process. They worked with superiors who were setting collective bargaining strategy. It was clear from the onset that those three employees were confidential employees under the Act. Then you had five remaining employees. The Board remanded for hearing one of the employees, Marilyn Davis, because there was specific evidence in the records that suggested that she simply wasn't administering the law, but she was actively involved with Labor Relations Counsel on resolving an issue that was adverse to the union in this case. So the Board wasn't simply allowing every member of the proposed bargaining unit to join. The Board was looking at it on an employee-by-employee basis and deciding whether or not there was sufficient evidence offered by CMS to warrant a hearing on that particular employee. So I think instead of talking about sort of the abstract aspects of the standards, I think it's more illustrative in this particular case, because there's so few employees, to really look on an employee-by-employee basis what they were offering up as proof and also what the Board found as enough proof to get Ms. Davis to a hearing. And I think if you look at the submission that the employer made, almost all of the documents beyond a job description and a performance review relate to Ms. Davis. And I think that's one of the reasons I think a Board thought a hearing was warranted in her case, because there was more than simply a job description that suggested things like reviewing documents or performing basic legal duties. It suggested that she was actively involved in the resolution of a case to which the union was adverse. You contrast that to the evidence offered for the other two allegedly confidential employees. In the case of Ms. O'Connell, it is true that she has the same general job responsibility and she reports to the same supervisor, but the supervisor, Mr. Schock, who's here today, he's not a Labor Relations Counselor. They're on the personnel side of the department. The Labor Relations Counselor are other individuals that Ms. Davis was working on in this one particular case. And it was her involvement in that case and then a second case where she was working with Labor Relations Counsel, which was what allegedly made her confidential. So there's no similar allegation on the part of Ms. O'Connell that would show that she's confidential. So they may have the same general job description, but the way that they're performing their job is different and the things that they're being tasked with is different. And the actual evidence that was sufficient to warrant an oral hearing applies to one employee, not the other. So I think that even though they... Well, how much evidence is needed to warrant a hearing? You heard Justice Connick's question. He basically said in describing the duties, he could envision where maybe the employee was in a confidential capacity, maybe in a management, or vice versa, maybe not. So why not a hearing? To me, it just makes sense. Well, why not a hearing? There is a cost to a hearing. And so the statute and then the board's rules implementing the act require a reasonable cost. You could imagine a system in which you would grant a hearing in every case, but the cost, both in terms to the agency, to the parties, and also the delay in allowing workers to join the union would be high. So the act allows the board to strike a balance by saying an oral hearing is not required in every case. The board's allowed to set rules. They've set a rule of reasonable cost. So there has to be a showing beyond some sort of possibly maybe if we got to a hearing stage, they could bring forth additional evidence. The board's rules are designed to avoid the cost and delay of a hearing by requiring the employer to bring forth at least a reasonable amount of evidence at the initial stage. If you think about it, your cases have analogized the board's procedure to summary judgment procedure. Imagine the civil justice system if every case had to go to trial. There were no devices such as 2615 or 2619 or summary judgment to dispense with cases without the cost of a full trial. The civil justice system would grind to a halt. The cost to the parties and to the public from administering that would rise. So you have to have some kind of balance between the amount of evidence you need to get to an oral hearing and also the interest in fully developing the records. So the board has said that reasonable cost is what's required. And again, if you look at the record in this case, the board did not deny a hearing to all of the employees. Where there was reasonable cost for Davis, where they offered specific evidence, and they made specific arguments, not simply listing vague job responsibilities, the board said, yes, that is reasonable cost. We'll go ahead and grant a hearing on this employee. But on the other employees, the allegations were either vague or unsupported, and the board said, no, there's not reasonable cost in these cases because there's such limited evidence. So if you want to look at the employees on an employee-by-employee basis, we can see just how limited the evidence was offered by CMS in each of those cases. I'd like to begin with the two managerial employees because I believe that those are the two where the evidence was extremely thin. The first, Mr. Cephas, who's Assistant Procurement Counsel, his job responsibilities are that of a lawyer. And we already know that this existing bargaining unit is lawyers. It has a number of lawyers that do the types of things that they're describing in this job description. For example, they provide technical advice and legal policy determinations. They advise other agencies on legal matters. They might draft legislation and regulations for review and approval by their superiors. Those are the kinds of things that lawyers do on a day-to-day basis. So if we have a number of lawyers that are already members of a bargaining unit, and we already have cases from this court as well as the Illinois Supreme Court, that say definitively not all lawyers are managerial as a matter of law. It's only a small class of lawyers that are managerial as a matter of law. We can see that Mr. Cephas is simply a rank-and-file lawyer. He's not involved in the running of the agency. He's not involved in making important decisions for the enterprise. He's simply carrying out policy in the same way that any other lawyer would be carrying out policy. He's applying his technical expertise in procurement and contract law to assist his superiors, but he's not exercising any of the kinds of authority that you would associate with being a manager. He's not involved in running the enterprise. He's not a trusted advisor of someone who runs the enterprise. He's simply a lawyer who does the work that's assigned to him by his superiors, and carries it out using his expertise. The only thing that they raised that could arguably be managerial that he does, I think if you look at the evidence in the record, it supports the board's finding on this. For example, they claim that he does protest review work, and that makes him a manager. Well, there's two protests letters in the record that allegedly show he's managerial. In one of those letters, he simply informed the protesting party that the agency had canceled the bid, and thus their protest was moved. That hardly signifies that someone's a manager. That letter could have been sent by a secretary or a clerk or anyone else. That's not exercising any kind of managerial authority. In the other, he's simply informing them of the department's policies as to the timeliness of, basically that the department uses the federal mailbox rule instead of the rule that was proposed by the protester, and also that he consulted with the agency, and the agency confirmed that the bid met the technical specifications. So if you look at the specific evidence that they submitted that they claim shows that he was a managerial employee, you'll see that it shows that he's simply applying a limited amount of legal knowledge and expertise, but he's simply not involved in running the operation in any significant way. They also made an argument about his responsibilities under the ARRA, the Federal Stimulus Program, but again, there's nothing saying here that he's doing anything more than what an ordinary lawyer would do. They're asking his opinion on what the statute means, and he provides an opinion on the statute. They're asking him for an opinion on whether or not the state's rules and regulations comply with the statute. He's providing them with an opinion. That's just general lawyer work. That's not the type of work that you would associate with a manager. I see that my time has expired. If you don't have any other questions, I'll turn it over to co-counsel. Thank you. May it please the Court. I'm Melissa Aravack. I represent and respond to AFSCME Council 31. I wanted to respond to a couple of points made by Counselor Mr. Weiner. I think to the extent that CMS is arguing here that prior decisions of this Court or other Courts have somehow changed the definition of managerial in the Act, that would be incorrect. That definition does still have a two-part test requiring that an employee be engaged predominantly in executive and management functions and be charged with responsibility for directing the infatuation of management policies and practices. Counselor cited the City of Freeport, but the City of Freeport was a supervisory case. It didn't involve a managerial issue, and the discussion of authority in the supervisor standard in that case is not applicable to this case, which doesn't involve any supervisory tests. To the extent that we're talking about the managerial standard, if CMS is arguing that any employee in state government who is involved in infatuating policy is managerial, it's unclear who in state government would be left eligible for purposes of collective bargaining representation. So I think instead of talking in those broad terms, it's more relevant to look, as Counsel has been doing for the Board, at the evidence and the employees in this case. And Counsel discussed Mr. Safis with respect to Ms. Maida. The employer also did not provide any evidence that she is engaged in anything other than routine legal work, not of a managerial nature. Clearly, if you look at the documents they did produce, it's a subordinate nature, working under the authority of others to deal with property leases. In accordance with state policy and practice, but not to make policy or even effectively recommend policy in any way, but simply to perform legal work for an area of central management services, not anything broad and high level in that department. And so clearly the state did not present sufficient evidence to warrant a hearing that either of the two supported managerial employees have any great level of managerial authority or executive functions to be excluded as managerial under the Act, and not sufficient evidence to show that they were entitled to a hearing and to delay the representation without any showing that there was evidence that would establish those employees to be managerial. With respect to the confidential issue, counsel incorrectly stated that the employees remaining in dispute, the two employees, Ms. O'Connell and Mr. Schweitzer, represent the state before the labor relations board. That's incorrect. The three labor relations counsel, whom the union agreed to exclude, do represent state agencies before the labor relations board. The two personnel counsel do not do so. And they are engaged on the personnel side of CMS. There are numerous employees throughout state and government who are currently represented for purposes of collective bargaining who engage in similar duties, personnel-type duties, including employees such as represented by AFSCME. There are internal security investigators who investigate human rights, EEO complaints, misconduct by other employees, there are employees not represented by AFSCME, such as investigators at the state police, who do similar work investigating misconduct or charges. And so that type of work by itself does not make somebody confidential. The CMS also didn't really show. I mean, there are two recognized tasks established by case law, including prior decisions of this court. There's the labor nexus test and the authorized access test under the confidential. Under the labor nexus test, an employee has to act in confidential capacity to somebody who is involved in formulating, effectuating, directing labor relations policy, collective bargaining policy. And CMS presented nothing to the board to show that the two purported confidential employees either act in a confidential capacity to Mr. Shuck, their supervisor, or that Mr. Shuck is engaged in collective bargaining formulation. And so they didn't make any preliminary showing. They didn't even argue anything that would show that they would meet that test. So that would be the authorized access test. And the case law is clear, both the Illinois Supreme Court case, chief judge of the circuit court of Cook County, and prior decisions of this court, including the community consolidated high school district and Glenview school district cases cited in my brief, that make it clear that under the authorized access test, the test is limited to employees who have unfettered access ahead of time to information pertinent to the review or effectuation of pending collective bargaining policies, that access to personnel files, hiring recommendations, discipline, performance evaluations, those things are insufficient to render someone confidential. That occasional, irregular, or potential access to collective bargaining material is also insufficient. This court so found in both of those prior cases arising under the ELRB, the Education Labor Board, but this confidential test is exactly the same under both statutes. And this court in those cases found, for instance, that secretaries to school principals who may have knowledge ahead of time of people being disciplined, that that's insufficient to make them confidential because they aren't involved in any way in collective bargaining or they don't have authorized access to collective bargaining. And the whole purpose of the confidential exclusion, which is intended to be narrow, is so that the employer isn't prejudiced by having employees in the unit who have advanced knowledge of collective bargaining proposals or policies that would give the unit an unfair advantage if the employees were represented. And there's no initial showing to even warrant a hearing that the employees here, Ms. O'Connell and Mr. Schweitzer, have any such access to any such information. And the fact that they advise and represent the state in the FMLA claims, FLSA claims, or in the case of Mr. Schweitzer, that he provides financial data and benefit information that may be used in labor relations policies, isn't enough to mean that he has actual access to the formulation of those policies. And there's nothing that showed that they did. So... What does it... As to Ms. O'Connell, for example, she provides legal representation for discrimination complaints made against CMS. Who would the discrimination complaint... Who would make the discrimination complaint? Another employee. Right, other employees. What part of any of this analysis does that play? I.e., Ms. O'Connell is a member of AFSCME, if she is. I mean, in this instance. And the employee who makes the discrimination complaint against CMS is an AFSCME employee. Her fiduciary loyalty as a lawyer is to her client. Her union loyalty and her interests, perhaps, as a member of the union, is to make sure that the complainant is treated fairly. One would hope that those two coincide. But there is the problem of divided loyalty. I guess my general question is, is this a healthy state of affairs?  I think that, and I know there are NLRB cases to the extent speaking to one, there's an assumption that employees have the ability to faithfully perform their jobs and to make that the first lesson. I don't think there's any reason to assume that employees cannot faithfully carry out their jobs and their job functions and still be members of unions and be represented. I agree. And as I said, there are currently employees represented who do, not only lawyers, but non-lawyers who do investigative work, who investigate charges of misconduct by other employees and are able to do that and still be represented. I mean, the Department of Human Rights investigators are represented by a union, and that's all they do is investigate charges. So is that an explanation about why we don't think about that? Or is there a, should it be part of the analysis, or should we simply make the assumption that it should never be part of the analysis? Well, I think that shouldn't be part of the analysis because it's not currently a statutory exclusion. It's not within the narrow confidential exclusion. It's an amorphous argument, general conflict of interest, and all the case law says the fact that someone may have access to what some people in lay terms would term confidential information, and that may include information of investigations of misconduct, isn't confidential within the meaning of the statute, which is labor relations related confidential. And so there are all kinds of other confidential information that employees may have access to that may be very sensitive and confidential in other respects. Here, when we're talking about the personnel section, I mean, if there's any area that would flow over into future contract negotiations and labor management relationships, it is through personnel, isn't it? But the fact that the investigations they conduct might later result in collective bargaining proposals or changes doesn't mean that what they're actually doing is confidential for purposes of collective bargaining. Thank you, Your Honor. Thank you, Counsel. Rebo, please. These are CMS, and this is the personnel division. Sorry, Your Honors. It's interesting, the union is now contesting what once O'Connell included when she, in the ALJ specifically, in the Aaron Davis case, make reference to the fact that in that case, she took the position that Ms. Davis and Ms. O'Connell were the same. They're basically the same functions and duties and should be included for that reason. And now we have a different position being taken, but lawyers do that. I think we were speaking in a hypothetical sense, and Ms. O'Connell was simply a touchstone or a reference. Oh, all right. I'm sorry. Not that I don't care about her, but she's just a name that popped up in front of me. Well, I think Your Honor, in your comments, though, did mention that she's like the ALJs of the Human Rights Commission. ALJs were determining the issues among other state employees as well. And I didn't mention ILRB. I mentioned the Illinois Department of Human Rights, Illinois Department of Human Rights Commission, and the U.S. Equal Employment Opportunity Commission, the state, 51 agencies, and most of them, as you know, over 50,000 of them are ASPE represented. A very important point in this case. All of the facts, all of the facts, including the position descriptions, the performance evaluations, and the narrative contained in the offer of proof were uncontested. Nobody contested those facts, ever. I mean, so these facts should be accepted by this court at least to grant the secureness to all of these people, or just to claim reverse based upon the uncontested facts. This is a case appropriate for summary judgment. Now, regarding Mr. Cephas, if you look at his position description at C-113, you'll see he really wants to show he's the Assistant Procurement Counsel. By the way, this is a managerial exclusion, and made as a managerial exclusion, the other two are confidential exclusions, O'Connell and Schweitzer. So, as to the managerial, under general direction of Senior Procurement Counsel, serves as Assistant Procurement Counsel providing technical advice and legal policy determinations in matters related to the procurement of activities of the department and other state agencies, et cetera. Handles contact-related policy regulatory matters. Assists Deputy General Counsel in drafting procurement legislation and policies. Provides technical advice and legal policy determinations. That's all uncontested facts. That makes him a manager. This guy actually participates in formulating the policy. He certainly does the effectuation of the policy. Same with regard to Ms. Ameda. And, again, numerous references in her performance evaluation that's in the record about provides technical advice and legal policy determinations to the department relating to property and facilities management. Cephas is procurement. Ameda is the facilities management. She's assisting the formulation of policy or to resolve property facility-related matters of interest in the department. Assists the Facilities Management Counsel and Deputy General Counsel in drafting legislation, amendments, rules, executive and administrative orders, and notices and policies relating to property facilities management. There's two people who are alleged to be managerial. We have sufficient proof to prove that they are managerial. Uncontested proof, or at least to get a hearing on that matter. Steve Schweitzer, I don't have time to go into. I would respect that he has both a position description and a performance evaluation, which establishes that he reviews policies and procedures and assists with respect to benefits. So these are the people at the top of the echelon in the nerve center of CMS. And four of them are thought to be excluded. We ask that they be excluded or at least be remanded for a hearing. Thank you. Thanks to the three of you. The case is submitted and the court stands in recess.